## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BMN ENTERTAINMENT, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 4:22-cv-3143** |
| | ) | |
| JE'CARYOUS JOHNSON | ) | |
| ENTERTAINMENT LLC AND | ) | |
| JE'CARYOUS JOHNSON, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff BMN Entertainment, LLC ("BMN" or "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Je'Caryous Johnson Entertainment LLC ("JJE") and Je'Caryous Johnson ("Mr. Johnson").[1] In support thereof, BMN states as follows:

## PARTIES

1.      Plaintiff BMN is a limited liability company organized and existing under the laws of the State of Illinois and having a place of business located at 4020 S Drexel Blvd Chicago, IL 60653.

2.      Upon information and belief, defendant JJE is a limited liability company organized and existing under the laws of the State of Texas with a principal place of business located at 12335 Glenleigh Drive, Houston, Texas 70014.

3.      Upon information and belief, defendant Mr. Johnson is domiciled in, and is a citizen of, the State of Texas.

---

[1] JJE and Mr. Johnson are referred to herein collectively at times as "Defendants."

## JURISDICTION AND VENUE

4.     Personal jurisdiction exists in Texas over each Defendant. More specifically, each of JJE and Mr. Johnson are subject to general jurisdiction in Texas.

5.     JJE is a citizen of the State of Texas.

6.     Mr. Johnson is a citizen of the State of Texas and is domiciled in Texas.

7.     Venue is proper in this Judicial District because both Defendants reside in this Judicial District.

8.     Venue is proper in this Judicial District because "a substantial part of the events or omissions giving rise to [BMN's] claim[s] occurred" in this Judicial District. 28 U.S.C. § 1391(b).

9.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act (17 U.S.C. § 101 et seq.), the Lanham Act (15 U.S.C. § 1051 et seq.), 28 U.S.C. § 2201, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.     Subject matter jurisdiction exists over this action also based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because BMN on the one hand, and each of JJE and Mr. Johnson on the other hand, are citizens of different states. BMN is a citizen of the State of Illinois. Each of JJE and Mr. Johnson are citizens of the State of Texas. The amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

11.     BMN and Defendants began exploring potential partnerships in or around January, 2021. These discussions began when Mr. Johnson, owner of JJE, contacted Blake Craft, co-owner of BMN, and proposed that the Parties collaborate. JJE's business involved predominantly planning, promoting, and booking talent for theatrical events, while BMN's business involved predominantly planning, promoting, and booking talent for comedy events.

12.     BMN and Defendants subsequently spoke over the phone and agreed to partner in connection with the planning, routing, booking, and promotion of a comedy tour.

13.     The Parties had agreed during their call that each would be entitled to a 50% share of profits earned by the partnership. The Parties further impliedly agreed that each would share a portion of the losses incurred by partnership.

14.     The Parties agreed that Defendants would handle the routing for the tour, BMN would book the comedic talent that would perform on the tour, and the Parties would both help with promoting the tour.

15.     The first comedy tour that the Parties booked and promoted jointly through their partnership occurred between February and May, 2022, and was promoted as the NO CAP COMEDY TOUR (the "Tour").

16.     BMN alone created the NO CAP COMEDY TOUR trademark.

17.     In advance of the Tour, in October, 2021, BMN retained Maximus Graphics, a graphic design firm, to create logos and other promotional materials for the Tour. BMN has utilized Maximus Graphics' services for approximately the past three years.

18.     BMN alone owns the copyrights in the promotional material created by Maximus Graphics for the No Cap Comedy Tour pursuant to a written assignment of the copyrights. This Copyright Assignment is attached hereto as Exhibit 1.

19.     BMN holds valid and subsisting U.S. copyright registrations for the works of visual art depicted below (the "Copyrighted Works") (*see* Exs. 2, 3), which works are encompassed by the above-referenced Copyright Assignment.





20.     In May, 2022, BMN began extensive discussions with talent agencies in an effort to enlist comedic talent to perform on a 22-city comedy tour that BMN has booked for September through December, 2022 (the "BMN Tour"). BMN has elected not to involve Defendants in this venture.

21.     BMN had intended to promote the BMN Tour to prospective attendees under the NO CAP COMEDY TOUR trademark and the contracts between BMN and the venues for the

BMN Tour indicate that the BMN Tour would be promoted under the name NO CAP COMEDY TOUR.

22.     Throughout the period that the Parties worked together, BMN included Defendants in many communications with talent agencies and venues. BMN has had long-standing business relationships with these talent agencies and with the comedic talent procured through said agencies, as well as with the entertainment venues. These business relationships pre-existed the Parties' association.

23.     Beginning in May, 2022, BMN began successfully enlisting numerous comedians to perform on the BMN Tour.

24.     Throughout the course of the Parties' having worked together, BMN shared substantial amounts of confidential and sensitive business information with Defendants. Such confidential and sensitive business information includes, by way of example only, contact information for key management personnel at entertainment venues throughout the U.S. who are responsible for booking events at the venues.

25.     Such confidential and sensitive information also includes contact information for comedic talent who plan to perform on the BMN Tour, as well as for their talent agents.

26.     Defendants have recently booked two comedians that had performed on the Tour to perform on Defendants' comedy tour taking place this fall that is competing with the BMN Tour. BMN has had long-standing professional relationships with each of these comedians since prior to formation of the Parties' de facto partnership. Defendants paid these comedians substantially above market rate in an effort to outbid BMN and procure this talent for themselves exclusively.

27.     In June, 2022, BMN began receiving communications from third-party entertainment venues indicating that Defendants had contacted them and indicated that Defendant JJE is the sole and exclusive owner of trademark rights in the trademark NO CAP COMEDY TOUR. An example of such correspondence from JJE to the venues is attached hereto as Exhibit 4.

28.     As reflected in said correspondence, JJE asserts that it began using the NO CAP COMEDY TOUR trademark in commerce in November, 2021, continues to use the mark in interstate commerce, and that if a venue uses the mark in connection with services not originating from JJE, they will be "in violation of federal trademark law and JJE will seek damages for violation of the trademark."

29.     On June 6, 2022, JJE filed a federal trademark application, U.S. Application Serial No. 97444116, with the U.S. Patent and Trademark Office for the standard character trademark NO CAP COMEDY TOUR. This application designates International Classes 18, 25, and 41. JJE filed this application based on a purported bona fide intent to use the mark in commerce in the future.

30.     On July 5, 2022, JJE filed a federal trademark application, U.S. Application Serial No. 97489677, with the U.S. Patent and Trademark Office for the standard character trademark NO CAP COMEDY. This application designates International Classes 9, 18, 25, 26, and 41. JJE filed this application based on a purported bona fide intent to use the mark in commerce in the future.

31.     On July 5, 2022, JJE filed a federal trademark application, U.S. Application Serial No. 97489606, with the U.S. Patent and Trademark Office for the standard character trademark NO CAP NO CAP COMEDY TOUR. This application designates International Classes 9, 18, 25,

26, and 41. JJE filed this application based on a purported bona fide intent to use the mark in commerce in the future.

32.     On July 5, 2022, JJE filed a federal trademark application, U.S. Application Serial No. 97489534, with the U.S. Patent and Trademark Office for the standard character trademark NO CAP COMEDY TOUR. This application designates International Classes 9, 18, 26, and 41. JJE filed this application based on a purported bona fide intent to use the mark in commerce in the future.

33.     In connection with each of the above-identified trademark applications, JJE submitted a signed and sworn declaration attesting, under penalty of perjury to, *inter alia*, the following:

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive; and

- The signatory believes that the applicant is entitled to use the mark in commerce.

34.     Any otherwise applicable corporate veil should be pierced here to extend liability for the claims asserted herein to Mr. Johnson personally. There exists such a unity of interest and ownership as between JJE and Mr. Johnson that the separate personalities of JJE and Mr. Johnson no longer exist. The circumstances here are such that the adherence to the fiction of a separate corporation or limited liability company would promote injustice. As alleged further herein, Mr. Johnson used JJE as a tool through which to defraud BMN. As alleged further herein, Mr. Johnson used JJE to perpetrate malicious interference with BMN's current and prospective valid business relationships with entertainment venues and other third-parties. Mr. Johnson is the Founder, sole owner, and Chief Executive Office of JJE.

35.     Mr. Johnson used the corporate form to achieve an inequitable result; namely, interference with BMN's efforts to book, route, and promote the BMN Tour, and disruption and termination of BMN's contracts with the entertainment venues that BMN had booked for the BMN Tour. As discussed herein, Mr. Johnson has breached legal and equitable duties owed to BMN. Mr. Johnson's conduct, including Mr. Johnson's holding JJE out as the sole and exclusive owner of trademark rights in the NO CAP COMEDY TOUR trademark, as complained of herein, has deceived BMN, as well as entertainment venues, comedic talent and their agents, and prospective attendees of comedy shows. As explained herein, Mr. Johnson has violated the confidence placed in him by BMN when the Parties entered into their de facto partnership in advance of the Tour. Mr. Johnson's conduct is injurious to the public interest because consumers are likely to mistakenly believe that services offered by Defendants alone under the NO CAP COMEDY TOUR mark emanate from the Parties' since-dissolved de facto partnership. Recognizing a separate corporate existence for JJE would bring about an inequitable result here because it would enable Mr. Johnson to avoid being held to account personally for the fraud and other unlawful activities complained of herein.

## COUNT I
## WILLFUL COPYRIGHT INFRINGEMENT

36.     BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

37.     BMN is the owner of valid and subsisting copyrights in the Copyrighted Works.

38.     Defendants have copied original elements of the Copyrighted Works.

39.     Defendants, *inter alia*, have reproduced, publicly displayed, created derivative works based upon, and distributed the Copyrighted Works without BMN's authorization. Non-

limiting examples of Defendants' infringing use of the Copyrighted Materials are attached hereto as Exhibits 5-7.

40.     Defendants had access to the Copyrighted Works as a result of the Parties' prior de facto partnership and, specifically, the Parties' prior joint venture involving the Tour.

41.     The image depicted on the left below appears on Defendants' website, www.nocapcomedytour.com. As reflected in the side-by-side comparison below, this image is substantially similar to each of the Copyrighted Works.

|  **Defendants' Infringing Work**  |  **BMN's Copyrighted Works**  |
| :---: | :---: |
|  |  |
| |  |

42.     As reflected above, Defendants' infringing work and the Copyrighted Works both prominently feature the language "No Cap." The "No Cap" verbiage in the infringing work appears in substantially the same stylized font as the first Copyrighted Work above. Defendants' infringing

work and each of the Copyrighted Works also include the verbiage "Comedy Tour." The stylized font for "Comedy Tour" in the infringing work is substantially the same as that of the second Copyrighted Work above. Further, Defendants' infringing work and each of the Copyrighted Works include a circle with a line through it and an image of a ball cap inside of the circle.

43.     As a direct and proximate result of Defendants' infringement of BMN's copyrights in the Copyrighted Works, BMN has suffered and continues to suffer irreparable harm.

44.     As a direct and proximate result of Defendants' infringement of BMN's copyrights in the Copyrighted Works, BMN has suffered and continues to suffer pecuniary harm.

45.     Defendants had actual or constructive knowledge that they were infringing BMN's copyrights in the Copyrighted Works.

46.     Defendants have willfully engaged in the acts complained of herein in conscious and reckless disregard of BMN's rights.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count I and for entry of temporary, preliminary, and permanent injunctive relief prohibiting further reproduction, distribution, creation of derivative works based upon, and publicly display of Defendants' infringing works identified above and any other works substantially similar to the Copyrighted Works. BMN further respectfully requests an Order awarding BMN actual and consequential damages caused by Defendants' conduct as complained of herein, awarding BMN all profits received by Defendants as a result of their infringement of the Copyrighted Works, awarding BMN the costs of this action, together with reasonable attorneys' fees, and awarding such other and further relief as the Court deems appropriate and just.

## COUNT II
## DECLARATORY JUDGMENT OF COPYRIGHT INFRINGEMENT

47.     BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

48.     BMN seeks a declaration that the unauthorized reproduction of, distribution of, preparation of derivative works based upon, or public display of Defendants' infringing works identified above or any other work substantially similar to BMN's Copyrighted Works shall constitute infringement of BMN's copyrights in the Copyrighted Works.

49.     This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine whether Defendants (individually or collectively) may reproduce, distribute, prepare derivative works based upon, publicly display, or otherwise use Defendants' infringing works identified above (or other work substantially similar thereto) in a manner that U.S. copyright law exclusively allocates to the copyright owner(s) or whether such activity would constitute infringement of BMN's copyrights in the Copyrighted Works.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count II and for entry of an order declaring that the unauthorized reproduction of, distribution of, preparation of derivative works based upon, public display of, or other use of Defendants' infringing works identified above, or any work substantially similar thereto, in a manner exclusively allocated to the copyright owner(s) under U.S. copyright law shall constitute infringement of BMN's copyrights in the Copyrighted Works, awarding BMN the costs of this action, together with reasonable attorneys' fees, and awarding such other and further relief as the Court deems appropriate and just.

## COUNT III
## DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP

50.     BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

51.     BMN seeks a declaration that that BMN is the sole and exclusive owner of trademark rights in the NO CAP COMEDY TOUR trademark.

52.     This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine which entity owns exclusive rights to use the NO CAP COMEDY TOUR trademark in interstate commerce in connection with planning, booking talent for, and promoting comedy events.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count III and for entry of an order declaring that BMN is the sole and exclusive owner of trademark rights in the NO CAP COMEDY TOUR trademark.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))

53.     BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

54.     The Parties began using the NO CAP COMEDY TOUR mark together as part of the Parties' No Cap Comedy Tour joint business venture in or around January, 2022.

55.     The Parties dissolved their joint business venture related to the Tour, and otherwise dissolved their at-will de facto partnership, in May of 2022.

56.     During the period when the Parties were jointly using the NO CAP COMEDY TOUR trademark to promote the Tour, BMN was primarily responsible for controlling the quality of the entertainment services offered under the trademark. This is because BMN was the party

responsible for acquiring the comedic talent. This included contacting their agents and booking entertainment venues for the performances. In so doing, BMN relied on its extensive contacts and pre-existing relationships with those in the comedy sector. While Defendants contributed to the Tour by planning the route of the Tour, the actual content and quality of the Tour was ensured by BMN. Further, BMN contributed a disproportionate amount of know-how to the Parties' de facto partnership. Upon information and belief, Defendants' experience promoting entertainment events was mostly limited to theatrical productions.

57.     Defendants' independent use of the NO CAP COMEDY TOUR trademark in interstate commerce and Defendants' correspondence to entertainment venues claiming to independently own trademark rights in the NO CAP COMEDY TOUR mark constitutes a false designation of origin with respect to entertainment services offered by Defendants under the mark at least because Defendants and BMN are no longer working together to procure the comedic talent being offered under the mark and BMN is no longer working with Defendants to otherwise plan and promote the Tour.

58.     Consumers are likely to mistakenly believe that services offered under the NO CAP COMEDY TOUR mark, when said mark is used by Defendants alone, are of the same quality as services offered under the mark when the Parties were using the mark jointly in connection with their de facto partnership. This is an inaccurate perception because BMN was primarily responsible for the quality of services offered under the mark when the Parties' joint venture was active and the Parties were using the mark jointly. Accordingly, Defendants' words and conduct constitute misleading statements of fact.

59.     Defendants' unauthorized independent use of the NO CAP COMEDY TOUR mark in connection with their services constitutes a false designation of origin, a false or misleading

13

description of fact, and false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Defendants' services with BMN and the origin, sponsorship, or approval of Defendants' services by BMN.

60.    Defendants' actions complained of herein constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

61.    Defendants have undertaken the actions complained of herein willfully and intentionally with the intent to trade upon BMN's reputation and goodwill by causing confusion and mistake among customers, including, without limitation, entertainment venues, comedic talent and their agents, and prospective attendees of comedy events.

62.    Defendants have undertaken the actions complained of herein with the intent of causing consumers to mistakenly believe that Defendants' services are associated with, sponsored by, approved by, or originate from BMN, when they are not and do not.

63.    Defendants had actual knowledge that BMN was primarily and substantially exclusively responsible for procuring the comedic talent that performed under the NO CAP COMEDY TOUR mark when the Parties were working together in connection with the Tour.

64.    Without BMN's consent and without BMN's quality control oversight, Defendants have used the NO CAP COMEDY TOUR trademark independently in connection with procurement of comedic talent and promotion of comedy events. Such actions constitute willful violations of 15 U.S.C. § 1125(a).

65.    Defendants have acted in bad faith and/or willfully in using the NO CAP COMEDY TOUR trademark independently without BMN's consent or quality control oversight. Defendants

have not and cannot offer services of a quality comparable to those offered under the mark when the Parties were engaged in their joint business venture related to the Tour.

66.     Defendants' actions have caused and will continue to cause BMN to suffer irreparable injury to its business reputation and goodwill. The inferior nature of services offered by Defendants independently under the NO CAP COMEDY TOUR mark will cause irreparable erosion to the NO CAP COMEDY TOUR brand and to BMN because consumers and the public at-large have come to associate the NO CAP COMEDY TOUR mark with BMN.

67.     BMN does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

68.     Given the willful and intentional nature of Defendants having misappropriated for themselves alone use of the NO CAP COMEDY TOUR trademark, this case qualifies as exceptional. See 15 U.S.C. § 1117(a).

**WHEREFORE** BMN prays for judgment in its favor with respect to Count IV and for entry of temporary, preliminary, and permanent injunctive relief prohibiting further use of the NO CAP COMEDY TOUR mark by Defendants. BMN further respectfully requests an Order awarding BMN actual and consequential damages, Defendants' profits, costs, as well as such further relief as the Court deems just, in an amount to be determined at trial but greater than $75,000. BMN further requests that any award of monetary damages be increased by a sum not exceeding three times the amount thereof as provided for by 15 U.S.C. § 1117(a). BMN further requests and order declaring this case exceptional and awarding BMN its reasonable attorneys' fees.

**COUNT V**
**MALICIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

69.     BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

70.     There was a reasonable probability of BMN entering into and/or continuing valid business relationships with entertainment venues and with comedians in connection with the anticipated BMN Tour.

71.     Such entertainment venues are located in more than 25 major cities throughout the U.S.

72.     Defendants knew of BMN's expectancy as a result of Defendants having contacted these entities as part of Defendants' scheme to plan and promote its own competing comedy tour also taking place this fall.

73.     Defendants acted with a conscious desire to prevent business relationships between BMN and the entertainment venues from materializing or continuing, and knew the interference was certain or substantially certain to occur as a result of Defendants' conduct.

74.     Defendants' purposeful interference has prevented BMN's legitimate expectancy from ripening into valid business relationships as expected and, in other instances, has caused entertainment venues to refuse to proceed with fulfilling their contractual obligations until the Parties resolve their disputes.

75.     As explained herein, Defendants' conduct was independently tortious and unlawful.

76.     Defendants' actions have caused BMN to incur substantial legal expenses and other costs associated with efforts to mitigate their damages.

16

77.     BMN is desperately seeking to mitigate its losses and preserve such expected relationships where possible but will suffer irreparable harm if injunctive relief is not granted by this Court.

78.     Defendants' conduct in contacting entertainment venues and falsely representing that JJE owns exclusive rights to use the NO CAP COMEDY TOUR trademark, and that such venues will, according to Defendants, be liable under the trademark laws if they permit use of the NO CAP COMEDY TOUR mark by an entity other than JJE, was malicious and in willful and wanton disregard of BMN's rights and the harm that would be caused to BMN by such misrepresentations.

79.     Defendants' conduct in expressly threatening entertainment venues with trademark litigation if such venues permit BMN to promote comedy events at their venues using the NO CAP COMEDY TOUR trademark was wrongful and malicious.

80.     Defendants seek to exploit the goodwill that BMN has established with entertainment venues and comedic talent over the course of many years by improperly independently using the NO CAP COMEDY TOUR trademark in connection with promotion of comedy events without the benefit of quality control oversight or input from BMN.

81.     Defendants seek to exploit for profit and to the detriment of BMN the trust and confidence that entertainment venues and comedic talent have placed in BMN.

82.     BMN has sustained financial and other injury as a result of Defendants' malicious interference with BMN's prospective economic advantage. The financial injury sustained by BMN as a result of Defendants' actions complained of herein exceeds $75,000.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count V and for entry of temporary, preliminary, and permanent injunctive relief prohibiting further use of the NO CAP

COMEDY TOUR mark by Defendants. BMN further respectfully requests entry of an Order awarding BMN actual and consequential damages caused by Defendants' conduct as complained of herein, awarding BMN punitive damages, and awarding such other and further relief as the Court deems appropriate and just.

**COUNT VI**
**FRAUDLENT CONCEALMENT**

83.    BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

84.    In or around January, 2021, Defendants falsely represented to BMN that Defendants were interested in jointly planning, promoting, and booking comedic talent for comedy events.

85.    Defendants knew that these statements were false and intentionally concealed their falsity.

86.    Defendants' actual motivation for proposing and entering into a de facto partnership with BMN was to gain BMN's trust and confidence, and by gaining such trust and confidence, gaining access to confidential and sensitive business information of the nature described herein owned by BMN.

87.    Defendants intentionally failed to disclose, and intentionally concealed, their true motivation for proposing and entering into a de facto partnership with BMN. Such concealment on the part of Defendants was intended to create a false belief on the part of BMN that Defendants were genuinely interested in a mutually beneficial de facto partnership.

88.    Defendants had a duty to disclose their true motivations for proposing and entering into a de facto partnership with BMN because of the fiduciary relationship that existed between

the Parties. That fiduciary relationship existed, *inter alia*, by virtue of the Parties having been engaged in a de facto partnership and in a joint venture with each other.

89.     The factual circumstances here, including that BMN placed trust and confidence in Defendants and shared confidential and sensitive business information with Defendants, gave rise to the Parties' fiduciary relationship.

90.     The Parties shared a special trust relationship wherein BMN placed trust and confidence in Defendants and Defendants gained influence over BMN as a result. Such influence includes that Defendants were put in a position to contact directly key management personnel at entertainment venues and misrepresent their own purportedly independent and exclusive authority to use the NO CAP COMEDY TOUR trademark in connection with promotion of comedy events.

91.     Defendants, through such words and conduct, and further through their concealment of their true motivations when proposing and entering into the de facto partnership with BMN, intended to induce BMN to share BMN's confidential and sensitive business information and to involve Defendants in BMN's pre-existing business relationships with entertainment venues and comedic talent and their agents.

92.     BMN was not aware of Defendants' true motivations and did not have an equal opportunity to discover them. BMN reasonably and justifiably relied on Defendants' misrepresentations with respect to Defendants' motivations.

93.     Defendants represented that Defendants were in the business of promoting theatrical talent to entertainment venues and booking that talent and that, therefore, Defendants believed that the Parties might be in a position to help each other grow their respective businesses, as BMN is in the business of promoting and booking comedic talent.

94.     Defendants' true motivation in partnering with BMN was to gain BMN's trust and confidence in order to thereby be in a position to attempt to usurp and assume control over business opportunities and relationships earned by BMN through BMN's established goodwill among, and pre-existing business relationships with, comedic talent and entertainment venues.

95.     Defendants' true motivations also included improperly trading off of BMN's goodwill among prospective attendees of comedy events. Defendants have attempted to effectuate this aspect of their scheme by attempting to misappropriate for their own independent use the NO CAP COMEDY TOUR trademark and related copyrighted promotional materials such as the Copyrighted Works after said mark and promotional materials were previously used by the Parties jointly in connection with the Tour. Such prior joint usage of said mark and promotional materials has resulted in consumers associating such mark and promotional materials with services of a quality offered by the Parties' de facto partnership during the Tour.

96.     BMN could not have discovered through reasonable inquiry or inspection the truth as to Defendants' true motivations for proposing a de facto partnership between the Parties. BMN relied upon Defendants' silence as a misrepresentation that Defendants genuinely and without ulterior motive were interested in carrying on business jointly for synergistic effect.

97.     BMN would have acted differently had BMN been aware of Defendants' deceptive intentions in proposing a de facto partnership between the Parties.

98.     Defendants intended, through their non-disclosure of their true motivations, for BMN to join in the Parties' de facto partnership.

99.     BMN has suffered damages as a result of Defendants' conduct complained of herein and BMN's reliance thereupon. BMN has incurred, and continues to incur, substantial legal costs seeking redress for Defendants' unlawful conduct complained of herein. BMN has further

sustained injury in the form of damage to its business relationships with venues and comedic talent as a result of Defendants' unlawful conduct complained of herein, which unlawful conduct Defendants would not have been in a position to undertake without Defendants having fraudulently concealed their true motivations for proposing and entering into joint ventures with BMN when the Parties began working together in January, 2021.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count VI and for entry of temporary, preliminary, and permanent injunctive relief prohibiting further use of the NO CAP COMEDY TOUR mark by Defendants. BMN further respectfully requests an Order awarding BMN actual and consequential damages caused by Defendants' conduct as complained of herein, awarding BMN punitive damages, and awarding such other and further relief as the Court deems appropriate and just.

### COUNT VII
### TORTIOUS INTERFERENCE WITH CONTRACT

100.    BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

101.    BMN has entered into valid and enforceable contracts with numerous entertainment venues. Such venues include, by way of example only, The Liacouras Center (located in Philadelphia, Pennsylvania), OLD Dominion University – Chartway Arena & SB Ballard Stadium (located in Norfolk, Virginia), and Addition Financial Arena (located in Orlando, Florida).

102.    Defendants knew of all or substantially all of BMN's contracts with the entertainment venues that are or were to host the comedy shows making up the upcoming BMN Tour.

103.    Upon receiving threatening communications from Defendants, such as that comprising Exhibit 4 hereto, alleging that JJE is the exclusive owner of rights in the NO CAP

COMEDY TOUR trademark, that no other entity has the right to use said mark, and that use of the mark by any entity other than JJE may lead to liability under the trademark laws, a number of the venues with which BMN had contracted have expressed that they are now unwilling to move forward with the event under the NO CAP COMEDY TOUR mark as originally planned.

104.   Defendants have intentionally interfered with BMN's contracts with numerous entertainment venues for the BMN Tour. Defendants have intentionally and unjustifiably induced numerous third-party entertainment venues to breach their contracts with BMN. While these venues will still be hosting the BMN Tour, they have indicated that they will not proceed with doing so under the NO CAP COMEDY TOUR name as originally contracted for.

105.   BMN has suffered actual damages as a result of Defendants' conduct complained of herein. BMN has incurred, and continues to incur, substantial legal costs seeking redress for Defendants' unlawful conduct complained of herein. BMN has further sustained injury in the form of damage to its business relationships with venues and comedic talent as a result of Defendants' unlawful conduct complained of herein.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count VII and for entry of temporary, preliminary, and permanent injunctive relief prohibiting further use of the NO CAP COMEDY TOUR mark by Defendants. BMN further respectfully requests an Order awarding BMN actual and consequential damages caused by Defendants' conduct as complained of herein, awarding BMN punitive damages, and awarding such other and further relief as the Court deems appropriate and just.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY

106.   BMN repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

107.    BMN and Defendants, during the period from January, 2021, through May, 2022, operated jointly as a de facto partnership in connection with the organizing, routing, booking, and promotion of the Tour.

108.    BMN and Defendants partnered for their common benefit.

109.    All Parties contributed property and/or services to the enterprise.

110.    The Parties had a community of interests in the profits earned through their professional association.

111.    The Parties each paid to promote the Tour and other events through social media. BMN paid for the preparation of the Copyrighted Works.

112.    The Parties expressly and impliedly agreed to carry on jointly their enterprise involving the planning and promoting of comedy shows, including the planning and promoting of the series of comedy performances comprising the Tour.

113.    The Parties manifested intent to be associated as de facto partners and as joint venturers. This intent may be inferred by the Parties' agreements with respect to division of responsibilities and allocation of profits earned through their professional association and related activity planning and promoting comedy performances, including the Tour. The Parties further expressly manifested intent to be partners in certain of the promotional materials used for the Tour.

114.    BMN and Defendants shared a joint interest in the affairs of their enterprise as shown by their contribution of, *inter alia*, financial resources, effort, skill, and knowledge.

115.    BMN and Defendants shared some degree of joint proprietorship of their enterprise.

116.    Defendants owed BMN and the de facto partnership a fiduciary duty, including a duty of loyalty.

117.     Defendants breached their fiduciary obligations when they sent baseless communications to venues holding themselves out as exclusive owners of the Mark, which was created and used for the purposes of the business of the partnership. Further, Defendants were only capable of contacting these venues because of the trust placed in them by BMN during the partnership.

118.     Defendants' breach of their fiduciary obligations to BMN has proximately caused BMN damage.

**WHEREFORE** BMN prays for judgment in its favor with respect to Count VIII and for entry of temporary, preliminary, and permanent injunctive relief prohibiting further use of the NO CAP COMEDY TOUR mark by Defendants. BMN further respectfully requests entry of an Order awarding BMN actual and consequential damages caused by Defendants' conduct as complained of herein, awarding BMN punitive damages, and awarding such other and further relief as the Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

BMN hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Date:   September 14, 2022                    /s/ Theodore J. Chiacchio*
                                             Scott Nyman
                                             Theodore J. Chiacchio (Affiliated Counsel)
                                             **Nyman IP LLC**
                                             20 N. Upper Wacker Drive, #1200
                                             Chicago, IL 60606
                                             Tel: (312) 487-2532
                                             Email: ted@nymanip.com

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV
Texas State Bar No. 24078928
Email: xmartin@mamlaw.com
**MALONE FROST MARTIN PLLC**
NorthPark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
P: (214) 346-2630 | F: (214) 346-2631


*Counsel for Plaintiff BMN Entertainment, LLC*

*\*Pro hac vice application forthcoming*